HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ERIC ADERHOLD,<br><br>    Plaintiff,<br><br>    v.<br><br>CAR2GO N.A., LLC,<br><br>    Defendant. | CASE NO. C13-489RAJ<br><br>ORDER |

**I. INTRODUCTION**

This matter comes before the court on Defendant's motion for judgment on the pleadings and Plaintiff's motion to strike. Although Plaintiff requested oral argument, the court finds oral argument unnecessary. For the reasons stated herein, the court GRANTS the motion for judgment on the pleadings (Dkt. # 13), ruling that Plaintiff's pleadings establish Defendant's affirmative defense to Plaintiff's sole claim arising under federal law. The court DENIES Plaintiffs' motion to strike. Dkt. # 35. In light of these rulings, along with the court's ruling from earlier today that Plaintiff's claim has not been mooted by Defendant's offer of judgment, the court declines to address Plaintiff's motion for class certification. The clerk shall TERMINATE that motion. Dkt. # 23. This order concludes with instructions to the parties regarding Plaintiffs' efforts to certify a class with respect to his remaining claims, all of which invoke Washington law.

ORDER – 1

## II.  BACKGROUND

Mr. Aderhold, a Seattleite, applied to become a car2go member in December 2012.  Car2go is a one-way local car-sharing service that Defendant car2go N.A., LLC provides.  In Seattle, for example, car2go provides hundreds of cars parked on city streets.  Any member can use a car to drive to any location within preset boundaries, paying car2go by the minute for the use of the car.  Once the member arrives at her destination, she simply leaves the car there, where another car2go member will presumably use it to go to another destination.  Car2go operates not just in Seattle, but in at least five other cities across the United States.

Mr. Aderhold registered to become a car2go member by filling out a brief form on the car2go website.  The form (Compl., Ex. 1) announced that unless Mr. Aderhold had a valid promotional code, he would pay a "One Time Registration Fee of $35.00 (plus tax)."  The form required him to input personal information including his postal address, his "[p]rivate cell number," and his email address.  The form included a section called "[o]ther mandatory disclosures," which informed him that he was required to review three documents as part of the registration process.  The form required him to check three boxes confirming his review and acceptance of the car2go "Terms and Conditions," the car2go "Trip Process" document, and the car2go "Privacy Policy."  The registration form explained that each of those documents would "control your membership application and subsequent participation in the car2go trip process."  The court will consider the disclosures contained in the registration form and these three documents in its later analysis.

Within seconds after Mr. Aderhold submitted his registration form, he received an email at the address he had provided and a text message on the cellular phone whose number he had provided.  The text message consisted of two sentences:  "Please enter your car2go activation code 145858 into the emailed link.  We look forward to welcoming you to car2go."

ORDER – 2

Then Mr. Aderhold sued. He asserts that car2go broke the law by sending him the text message. In particular, he relies on the automated dialing restrictions of the federal Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(b), as well as the ban on unsolicited commercial text messages found in the Washington Commercial Electronic Mail Act ("CEMA"), RCW 19.190.060. He also asserts a Washington Consumer Protection Act ("CPA") claim that derives at least in part from the alleged CEMA violation. Mr. Aderhold hopes to represent a class of all car2go members and prospective members who have been or might be injured as a result of car2go's text messages.

At the threshold, however, car2go contends that Mr. Aderhold's TCPA claim is a non-starter. The portion of the TCPA on which Mr. Aderhold relies does not prohibit calls "made with the prior express consent of the called party . . . ." 47 U.S.C. § 227(b)(1)(B). Car2go has moved for judgment on the pleadings, contending that Mr. Aderhold's complaint establishes that he consented to receive the text message that car2go sent him. Mr. Aderhold has moved to strike the affirmative defense of consent from car2go's answer to his complaint. The court now considers both motions. After resolving them, it considers what claims remain in this suit and Mr. Aderhold's efforts to certify a class to pursue those claims.

### III.   ANALYSIS

**A.   Motion for Judgment on the Pleadings: Standard and Applicability to TCPA Affirmative Defense of "Prior Express Consent"**

The court begins its analysis at car2go's motion for judgment on the pleadings. That motion, which Federal Rule of Civil Procedure 12(c) authorizes, is "functionally equivalent" to a Rule 12(b)(6) motion to dismiss for failure to state a claim. *Harris v. County of Orange*, 682 F.3d 1126, 1131 (9th Cir. 2012). Rule 12(b)(6) requires the court to assume the truth of the complaint's factual allegations and credit all reasonable inferences arising from its allegations. *Sanders v. Brown*, 504 F.3d 903, 910 (9th Cir. 2007). The plaintiff must point to factual allegations that "state a claim to relief that is

ORDER – 3

plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 568 (2007). If the plaintiff succeeds, the complaint avoids dismissal if there is "any set of facts consistent with the allegations in the complaint" that would entitle the plaintiff to relief. *Id.* at 563; *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."). The court typically cannot consider evidence beyond the four corners of the complaint, although it may rely on a document to which the complaint refers if the document is central to the party's claims and its authenticity is not in question. *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006). The court may also consider evidence subject to judicial notice. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

A motion for judgment on the pleadings may also serve as a vehicle for asserting an affirmative defense. When an affirmative defense "is obvious on the face of a complaint," a defendant can assert that defense in a Rule 12(b)(6) motion or, presumably, in a motion for judgment on the pleadings. *Rivera v. Peri & Sons Farms, Inc.*, 735 F.3d 892, 902 (9th Cir. 2013).

Car2go's motion revolves around its affirmative defense that Mr. Aderhold consented to the text message he received. Consent, as the court has noted, is an escape route for a caller who might otherwise face TCPA liability. Mr. Aderhold asserts that car2go violated a portion of the TCPA making it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice" to any "cellular telephone service . . . ." 47 U.S.C. § 227(b)(1)(A)(iii).[1] Although the court knows of no federal appeals court that has addressed the issue, district courts deem "prior express consent" to be "an affirmative defense to be raised and proved by a TCPA

---

[1] Text messages are "calls" within the meaning of this portion of the TCPA. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009).

ORDER – 4

defendant," rather than "an element of Plaintiffs' TCPA claim."  *Connelly v. Hilton Grand Vacations Co., LLC*, No. 12cv599 JLS (KSC), 2012 U.S. Dist. LEXIS 81332, at *9 (S.D. Cal. Jun. 11, 2012); *see also Baird v. Sabre Inc.*, No. CV 13-999 SVW, 2014 U.S. Dist. LEXIS 11246, at *5 (C.D. Cal. Jan. 28, 2014); *Kolinek v. Walgreen Co.*, No. 13 C 4806, 2014 U.S. Dist. LEXIS 15986, at *4 (N.D. Ill. Feb. 10, 2014).

The court now considers whether car2go is entitled to judgment on the pleadings that Mr. Aderhold gave his "prior express consent" to the text message he received.

**B.      "Prior Express Consent" in the Courts**

If the number of recent decisions on the issue is any indication, the meaning of "prior express consent" in the TCPA is being litigated almost daily in the federal district courts.  Few courts of appeals, however, have weighed in, or at least not in a way that addresses Mr. Aderhold's circumstances.

**1.      Ninth Circuit**

The Ninth Circuit has given some guidance on the meaning of "prior express consent."  In *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 949 (9th Cir. 2009), it considered the claims of a consumer who, to obtain a cellular ringtone, disclosed her cellular telephone number to a company ("Nextones") via a registration form on the internet.  She checked a box indicating that she wanted to "receive promotions from [Nextones] affiliates and brands."  *Id.*  She later received a text message from another company ("Simon & Schuster") promoting a novel.  *Id.*  The court found that the text came neither from an "affiliate" of Nextones nor from a Nextones "brand."  *Id.* at 955.  It concluded that the consumer's "consent to receive promotional material by Nextones and its affiliates and brands cannot be read as consenting to the receipt of Simon & Schuster's promotional material."  *Id.*  Read narrowly, *Satterfield* stands only for the proposition that a person's "prior express consent" to receive communications from one entity is not "prior express consent" to receive communications from another entity.

ORDER – 5

Mr. Aderhold urges a broader reading of *Satterfield*, focusing on the court's statement that "[e]xpress consent is 'consent that is clearly and unmistakably stated.'" 569 F.3d at 955 (quoting Black's Law Dictionary 323 (8th ed. 2004)).  He argues that because the consumer in *Satterfield* had to take the affirmative step of checking a box to request promotional material, a similar affirmative step is required in every case.  As he puts it, express consent must not only be clear and unmistakable, it must be affirmatively "stated."  He also argues that a disclosure as explicit as the one in *Satterfield* (i.e., a disclosure that checking a box would result in the receipt of promotional material from a specific sender (and its affiliates and brands) is necessary in every case.

In its later analysis, the court will consider Mr. Aderhold's attempt to stretch *Satterfield* beyond its holding.  For now, the court considers how the district courts, including some who are bound by *Satterfield*, have interpreted express consent.

### 2.   District Courts Interpreting "Prior Express Consent" Broadly, Consistent with Federal Communications Commission Rulemaking

Some district courts take a broad view of "prior express consent," suggesting that anyone who provides a cellular phone number to a business consents to the business's use of the number to contact him or her.  *E.g.*, *Pinkard v. Wal-Mart Stores, Inc.*, No. 3:12-cv-2902CLS, 2012 U.S. Dist. LEXIS 160938, at *8-10 (N.D. Ala. Nov. 9, 2012); *Roberts v. PayPal, Inc.*, No. C 12-622PJH, 2013 U.S. Dist. LEXIS 76319, *9-13 (N.D. Cal. May 30, 2013).  Those courts base their analysis in part on the Federal Communication Commission's 1992 rulemaking document implementing the TCPA ("1992 Ruling"). *Pinkard*, 2012 U.S. Dist. LEXIS 160938, at *8; *Roberts*, 2013 U.S. Dist. LEXIS 76319, at *7.  In the 1992 Ruling, the FCC concluded that "persons who knowingly release their phone numbers have in effect given their invitation or permission to be called at the number which they have given, absent instructions to the contrary."  7 F.C.C.R. 8742, 8769.

ORDER – 6

Mr. Aderhold mistakenly contends that the 1992 Ruling does not apply to car2go's text message. He points out that the broad statement on which courts have relied applies only to calls that are "otherwise subject to the prohibitions of" a specific regulation. 7 F.C.C.R. 8742, 8769. But that regulation, which the 1992 Ruling reproduces in full, applies to any call "using an automatic telephone dialing system . . . ." 7 F.C.C.R. 8742, Appx. B. (quoting 47 C.F.R. § 64.1200(a)(1)). It thus applies to the text message car2go sent.

### 3. District Courts Interpreting "Prior Express Consent" in the Context of the Transaction in Which A Consumer Provides His Cellular Number

Many courts who have not opined broadly about the meaning of express consent have nonetheless found consent to send text messages based on the context of the transaction in which a consumer provides her cellular number. Several courts have found that sending a text message to an entity for the purpose of opting out of receiving future text messages is nonetheless consent to receive a final text message confirming the opt-out request. *Ibey v. Taco Bell Corp.*, No. 12-CV-583-H (WVG), 2012 U.S. Dist. LEXIS 91030, at *7-8 (S.D. Cal. Jun. 18, 2012); *Ryabyshchuck v. Citibank N.A.*, No. 11-CV-1236-IEG (WVG), 2012 U.S. Dist. LEXIS 156176, at *7-8 (S.D. Cal. Oct. 30, 2012). These rulings are consistent with a recent FCC declaratory ruling. *In re SoundBite Comm'ns, Inc.*, 27 F.C.C.R. 15391 (Nov. 29, 2012) (concluding that "that sending a one-time text message confirming a consumer's request that no further text messages be sent does not violate the T[CPA]").

The court in *Emanuel v. Los Angeles Lakers, Inc.* found that when a consumer sends a text message requesting a service, she consents to receipt of a text message confirming receipt of the request. No. CV 12-9936-GW(SHx), 2013 U.S. Dist. LEXIS 58842, at *12 (C.D. Cal. Apr. 18, 2013).

*Ibey*, *Ryabyshchuck*, and *Emanuel* are specific examples illustrative of courts who focus on the nature of the transaction in which a consumer providers her cellular number

ORDER – 7

to determine the scope of her "prior express consent."  In *Roberts*, for example, the consumer provided his cellular number while accessing the PayPal online payment website to make a payment.  2013 U.S. Dist. LEXIS 76319, at *3-4.  He then received a text inviting him to learn more about PayPal's mobile phone payment service.  *Id.* at *4.  The court distinguished *Satterfield* by noting that the "content of the complained-about text message is closely related to the circumstances under which plaintiff provided his cell phone number."  2013 U.S. Dist. LEXIS 76319, at *13.  Several of those courts (and others) have noted the Ninth Circuit's endorsement, in a case addressing a different aspect of the TCPA, of "approach[ing] the problem with a measure of common sense."  *Emanuel*, 2013 U.S. Dist. LEXIS 58842, at *8 (quoting *Chesbro v. Best Buy Stores, L.P.*, 697 F.3d 1230, 1234 (9th Cir. 2012)); *Ryabyshchuck*, 2012 U.S. Dist. LEXIS 156176, at *6 (same).  Those courts, and others, have been guided by the legislative purposes of the TCPA.  *E.g.*, *Ryabyshchuck*, 2012 U.S. Dist. LEXIS 156176, at *6 ("[T]he purpose and history of the TCPA indicate that Congress was trying to prohibit use of [automated dialing equipment] in a manner that would be an invasion of privacy.") (quoting *Satterfield*, 569 F.3d at 954); *Emanuel*, 2013 U.S. Dist. LEXIS 58842, at *8 (noting that the TCPA targets the "proliferation of intrusive, nuisance calls") (quoting *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 744 (2012)).

Even in cases that Mr. Aderhold touts, courts determine "prior express consent" from the context of a transaction.  In *Mais v. Gulf Coast Collection Bureau, Inc.*, the court declined to defer to a 2008 FCC ruling that clarified the "prior express consent" defense in the context of calls from a creditor to a debtor.  944 F. Supp. 2d 1226, 1235-1239 (S.D. Fla. 2013) (considering *In re Rules and Regulations Implementing the TCPA*, 23 F.C.C.R. 559 (Jan 4., 2008) ("2008 Ruling")).  It took a narrow view of "prior express consent," ruling that there was no consent where there was no evidence that a hospital patient "expressly told the Hospital that it, or any of its agents or affiliates, could call

ORDER – 8

1  Plaintiff on his cell phone using an automatic telephone dialing system . . . for debt
2  collection or payment purposes." *Id.* at 1239 ("The TCPA plainly requires such 'prior
3  express consent' before a party may be called; mere 'implied consent' will not do."). But
4  the *Mais* court acknowledged that "[i]n the context of retail purchases, consumer credit
5  transactions, and the like, a debtor might reasonably expect a creditor to call the cell
6  phone number he provided at the time of the debt-creating transaction, if he fails to pay
7  his bill." *Id.* at 1240.

In *Thrasher-Lyon v. CCS Commercial, LLC*, the court held that a plaintiff who gave her cellular phone number to an insurance claims adjuster in connection with its investigation of a car accident had not consented to later automatically-dialed calls from an entity attempting to collect on the insurer's subrogation claim against her. No. 11-c-4473, 2012 U.S. Dist. LEXIS 125203, at *2-3, *7 (N.D. Ill. Sept. 4, 2012). The court held that the TCPA requires not merely consent to be called, but consent to be called with automatic dialing equipment. *Id.* at *8 (interpreting "'prior express consent' to require consent to robocalls, not just consent to receiving telephone calls"). Unlike the *Mais* court, the *Thrasher-Lyon* court found that it was bound by the 2008 Ruling,[2] but the court also explained that the case did "not involve a debtor-creditor or other relationship where providing a phone number 'reasonably evidences' express consent to be called, even with automated equipment, about a debt." *Id.* at *9-11.

---

[2] Car2go places especial reliance 2008 Ruling's elaboration on the application of the TCPA to instances in which consumer debtors disclose telephone numbers to creditors. That ruling does not apply directly to this case, as Mr. Aderhold is not debtor with respect to car2go and car2go is not his creditor. The court observes, however, that the FCC's conclusion that "the provision of a cell phone number to a creditor, *e.g.*, as part of a credit application, reasonably evidences prior express consent by the cell phone subscriber to be contacted at that number regarding the debt" is consistent with the view of consent expressed by *Satterfield* and most district courts. 23 F.C.C.R. 559 at 564.

ORDER – 9

**C.    Car2go Obtained Mr. Aderhold's Prior Express Consent to the Text Message He Received.**

Before applying *Satterfield* and persuasive district court authority, the court considers in detail the facts surrounding Mr. Aderhold's consent.

**1.    Car2Go's Disclosures To Mr. Aderhold**

The car2go registration form that Mr. Aderhold completed informed him that the car2go Terms and Conditions, Trip Process, and Privacy Policy documents would "control [his] membership application and subsequent participation in the car2go trip process."[3] It required him to click three boxes, corresponding to each of the documents, agreeing to their provisions.

It is the "Trip Process" document that contains the most specific explanation of the process of applying for a car2go membership. The first substantive section of that seven-page document explains that the applicant will "register through a self-initiated online car2go registration process." Compl.., Ex. 3 at ¶ I. It explains that car2go "will validate personal information provided by the applicant." *Id.* It also explains that car2go must approve a membership application before the registrant becomes a member, and that it might decline a membership application for specified reasons or for no reason at all. *Id.* It explains, however, that if "membership criteria are met, as determined at car2go's sole discretion, and applicable fees, if any, have been paid, car2go will confirm acceptance of the application . . . ." *Id.*

Later, in a portion of the Trip Process document devoted to an explanation of reserving and accessing car2go cars, car2go discloses as follows:

> [C]ar2go retains the right to refuse advance booking if the number of available vehicles is not sufficient to fulfill all reservation requests.

---

[3] Mr. Aderhold makes a cursory argument that he should not be charged with knowledge of the disclosures of the Terms and Conditions, Trip Process, and Privacy Policy documents. He cites no Washington authority pertinent to that argument, and his pleadings assert no facts that would permit a court to reach the conclusion that he should not be deemed to be aware of what is disclosed in those documents. *See Kwan v. Clearwire Corp.*, No. C09-1392JLR, 2011 U.S. Dist. LEXIS 150145, at *19-28 (W.D. Wash. Jan. 3, 2012) (discussing validity of "shrinkwrap," "clickwrap," and "browsewrap" contracts).

ORDER – 10

> *[C]ar2go may confirm a registration via instant text message.* Members should note that cell phone providers may charge a fee for receiving text messages. Members should contact their cell phone providers for any fees associated with receipt of text messages. [C]ar2go is not responsible for any fees assessed by the Member's cell phone provider for receipt of text messages.

Compl., Ex. 3 at ¶ IV(B) (emphasis added). The parties dispute the import of this provision. Car2go contends that it expressly discloses that it will confirm registration (i.e., the registration form that initiates the membership application process) with a text message. Mr. Aderhold contends that the clause, which is the sole mention of "registration" in a portion of the Trip Process document that refers solely to the reservation and use of cars, is misleading at best. He also notes that the Terms and Conditions document contains precisely the same disclosure *except* that it uses the term "reservation" in lieu of "registration." Compl., Ex. 2 at ¶ 5.2. He suggests that car2go's use of "registration" in the Trip Process document is an error, and that a reasonable reader would understand it to be an error.

In addition to the Trip Process document, the Privacy Policy document contains the following disclosure, under the heading "Use of Personal Information":

> As part of the membership application process, car2go may collect personal information . . . for the purpose of evaluating applications for car2go car-sharing membership. Any information collected may also be stored, retained or used in other car2go business processes including, but not limited to, membership renewal, periodic membership validation, member account-management and payment authorization.

Compl., Ex. 4.

> **2.   Applying Virtually Any Court's View of the TCPA's "Prior Express Consent" Defense, Mr. Aderhold Consented to the car2go Text Message.**

Considering all of the foregoing authority, the court concludes that Mr. Aderhold gave his "prior express consent" to receiving the text message from car2go. The court does not purport to rule upon what "prior express consent" means in every case, it merely holds that Mr. Aderhold consented to the message at issue.

ORDER – 11

Although it is tempting, the court declines to ground its conclusion solely in car2go's disclosure in the Trip Process document that it could "confirm a registration via instant text message." It is possible, perhaps even likely, that a reasonable reader of that document would understand the use of the term "registration" to refer to the registration form that Mr. Aderhold sent in. But given the context – specifically the use of the term in a section that otherwise does not bear upon the "registration" process and the use of the term "reservation" in place of "registration" in an otherwise identical disclosure in the Terms and Conditions – the court finds that reasonable people could either be confused about the meaning of "registration" or conclude that that car2go used the term in error.

The court grounds its conclusion, instead, in the reasoning of *Satterfield*. Much like the consumer in *Satterfield*, Mr. Aderhold checked a box (three of them, actually) indicating his assent to particular conditions. Among those was the disclosure in the Trip Process document that car2go "will validate personal information provided by the applicant." Compl.., Ex. 3 at ¶ I. The same document explained that "car2go will confirm acceptance of the application . . . ." *Id.* And more generically, the Privacy Policy disclosed that car2go would use his personal information in any car2go "business process," including but not limited to "periodic membership validation." The text message that Mr. Aderhold receives falls squarely within the scope of these disclosures. It "validated" that Mr. Aderhold had disclosed a valid cellular telephone number, it "confirm[ed] acceptance of [his] application," and it was a form of "membership validation."

Unlike Mr. Aderhold, the court does not interpret the *Satterfield* panel's declaration that express consent must be "clearly and unmistakably stated" to require any particular form of consent. *See In re Rules and Regulations Interpreting the TCPA*, 27 F.C.C.R. 1830, 1838 ("[W]e note that the TCPA is silent on the issue of what form of express consent – oral, written, or some other kind – is required for calls that use an

ORDER – 12

automatic telephone dialing system . . . to deliver a telemarketing message.") (Feb. 15, 2012).[4] In particular, it does not require specific consent to the medium by which a company contacts a consumer.[5] The consumer in *Satterfield* did not consent to be contacted by text message, she merely consented to "receive promotions" on a form in which she provided her email address and cellular phone number. 569 F.3d at 949. The *Satterfield* court held that a "voice message or a text message are not distinguishable in terms of being an invasion of privacy," *id.* at 954, and the court expects that the *Satterfield* court would have reached the same conclusion about email as well. In Mr. Aderhold's case, although he arguably did not explicitly grant permission for car2go to contact him *by text message* regarding his registration form, no reasonable person in his shoes could have doubted that car2go would contact him in some manner. That car2go chose a text message (in addition to an email) is not significant. Mr. Aderhold clearly and unmistakably consented to being contacted about his registration for car2go.

    *Satterfield* is the touchstone of the court's analysis, but court's ruling today takes guidance from district court cases that the court has cited herein (and many more that it has not cited). Many of those cases apply *Satterfield* in a manner that is both faithful to that court's reasoning and consistent with common sense. Although the text that car2go sent Mr. Aderhold is not a simple confirmation of receipt of a consumer's text message, the cases addressing confirmatory text messages (*Ryabyshchuck*, *Ibey*, and *Emanuel*) embrace the notion that a customer who sends a text at least consents to receive a text confirming its receipt. Although the court has no need to consider how broadly to

---

[4] Mr. Aderhold points the court to the FCC's recent revamping of regulations pertaining to unwanted telemarketing calls. 27 F.C.C.R. 1830 (Feb. 15, 2012). The court has not analyzed those rules in detail, and suggests no view on whether they would prohibit or permit the text message that car2go sent in this case. The court merely notes that the revised rules did not become effective until at least February 2013. 27 F.C.C.R. 1830, 1857.

[5] The *Thrasher-Lyon* court, not bound to follow *Satterfield*, ruled that a plaintiff must not merely consent to being called, she must content to be called via automatic dialing equipment. 2012 U.S. Dist. LEXIS 125203, at *8-9. This court finds that *Satterfield* implicitly forecloses that ruling.

ORDER – 13

construe the consent of a consumer who provides his cellular phone number to an entity, this court concurs with others who have concluded that a consumer at least consents to text messages "closely related to the circumstances under which plaintiff provided his cell phone number." *Roberts*, 2013 U.S. Dist. LEXIS 76319, at *13.

Permeating this court's conclusions is the common sense approach that courts construing the TCPA have advocated. Even if car2go had made no disclosures at all about the purposes for which it would use Mr. Aderhold's cellular number, it defies logic to contend that he did not consent to be contacted regarding his membership application. When people provide their telephone numbers in commercial transactions, it would be odd to imagine that they do not consent to being contacted for purposes of completing that transaction. Could a person who provided a telephone number to a delivery service seriously contend that she had not consented to be telephoned by the service to inform her that her package was en route? Could a person who provided a telephone number to a mechanic claim that she did not consent to be called (or texted) when her car was repaired? According to Mr. Aderhold, if the delivery service and mechanic used an autodialer to make those calls, then they broke the law. The court is confident that Congress did not intend that result when it passed the TCPA. And although Mr. Aderhold is apparently an exception, the court doubts that most customers would feel that their privacy had been invaded by such calls. All of these considerations strengthen the court's conclusion that Mr. Aderhold consented to the text message he received.

### 3. Car2Go's Text Was Not "Telemarketing," and Car2Go's Alleged Deception Does not Vitiate Mr. Aderhold's Consent.

Mr. Aderhold's additional attempts to convince the court that he withheld consent are not persuasive. Attempting to connect the car2go text he received to the sort of telemarketing call that is at the heart of the TCPA, he argues that because the text directed him to place an activation code into an email that ultimately connected to the car2go website which contains promotions for the car2go service, it was a telemarketing

ORDER – 14

text. The court has no difficult concluding that he is mistaken. There is no indication that the text was intended for anything other than the limited purpose stated in its two sentences: to permit Mr. Aderhold to complete registration. It is manifestly insufficient that Mr. Aderhold could, after choices of his own making, divert himself from the registration process to car2go marketing. The court need not decide if Mr. Aderhold consented to telemarketing texts, it suffices to conclude that the text he received was not telemarketing. *Cf. Chesbro*, 697 F.3d at 1234-35 (concluding that message informing plaintiff about expiration of "reward points" was implicitly an exhortation "to make future purchases).

Mr. Aderhold also unsuccessfully argues that car2go's alleged "deception" in soliciting registrations somehow vitiates his consent. The "deception" to which he points is that car2go offered registration either for no cost or for a fixed fee plus applicable taxes, but did not disclose the possibility that he would receive a text message that might result in a nominal charge[6] from his or her cellular phone provider. In addition, he argues that car2go's use of three documents in addition to its registration form is inherently deceptive. The court suggests no opinion on whether car2go's failure to explicitly warn customers of a possible fee for a text message sent in connection with the registration process is "deceptive" within the meaning of any law. The court only concludes that the possibility of third-party fees (which can apply to voice calls as well as texts) is not relevant to whether a party who provides its phone number to an entity has consented to be contacted at that phone number. Similarly, the court has already indicated that Mr. Aderhold has not alleged facts from which the court could conclude, even taking all inferences in his favor, that car2go deceptively displayed the three documents referenced in the registration form. *See supra* n.3.

---

[6] Mr. Aderhold's complaint is silent as to the amount of the charge. He later declared that the text message cost him ten cents. Aderhold Decl. (Dkt. # 24) ¶ 10.

ORDER – 15

### 4. Mr. Aderhold's Motion to Strike

Before moving beyond Mr. Aderhold's TCPA claim, the court notes that its decision to grant car2go's motion for judgment on the pleadings as to the TCPA claim makes it unnecessary to address Mr. Aderhold's motion to strike car2go's "prior express consent" affirmative defense. In particular, the court suggests no opinion as to whether a motion to strike an "insufficient defense," via Federal Rule of Civil Procedure 12(f), is an appropriate vehicle to excise from an answer an affirmative defense that does not meet the plausibility-in-pleading standards of *Twombly*, *Iqbal*, and their progeny. The court also suggests no view on whether affirmative defenses are actually subject to plausibility-in-pleading standards. The court merely holds that because Mr. Aderhold's pleadings suffice to demonstrate that car2go is entitled to judgment as to its "prior express consent" defense, it will not strike that defense from car2go's answer.

The court also notes that it could have directed the clerk to terminate Mr. Aderhold's motion to strike because he ignored a court order in filing it. On June 24, 2013, the court ordered the parties to meet and confer before filing *any* motion and to certify that they had done so, in addition to certifying that they had attempted to propose reasonable limits on the number and length of their motions. Jun. 24, 2013 minute order (Dkt. # 30) at 2. Mr. Aderhold filed his motion to strike without including the required certification. The court will summarily strike any future motion that does not comply with that order, and will consider imposing sanctions.

### D. The Parties Must Meet and Confer Regarding the Fate of Mr. Aderhold's Claims Under Washington Law.

Although car2go insists that its motion for judgment on the pleadings is completely dispositive, its sole effort to address Mr. Aderhold's Washington law claims is a footnote in its motion that states that the court cannot exercise supplemental jurisdiction over those claims once the court dismisses his TCPA claim. Def.'s Mot. (Dkt. # 13) at 20 n.9. Car2go is flatly wrong. Provided the court had original jurisdiction

ORDER – 16

over at least one federal claim (Mr. Aderhold's TCPA claim suffices), it has supplemental jurisdiction over state law claims arising out of the same case or controversy. 28 U.S.C. § 1367(a). The court has discretion to decline to exercise supplemental jurisdiction after it "has dismissed all claims over which [it] has original jurisdiction," § 1367(c)(3), but it has no mandate to do so. *See*, *e.g.*, *Sea-Land Serv. v. Lozen Int'l, LLC*, 285 F.3d 808, 814 (9th Cir. 2002) ("Although the district court *could have* dismissed [plaintiff]'s state-law claim after dismissing the [federal] claim, it did not abuse its discretion by choosing to entertain the merits of the state-law claim.") (emphasis in original).

Car2go offered no argument as to why the court should exercise its discretion to decline jurisdiction over Mr. Aderhold's Washington claims. Moreover, Car2go did not respond to Mr. Aderhold's assertion that the Class Action Fairness Act gives the court an additional basis for jurisdiction, because Mr. Aderhold hopes to represent a class of at least one hundred people whose claims, in the aggregate, are worth more than $5 million. 28 U.S.C. § 1332(d).

Not only does the court have no basis to decline jurisdiction as to Mr. Aderhold's Washington claims, it has no basis to dismiss them. Car2go offered no argument that a conclusion that Mr. Aderhold gave his "prior express consent" in accordance with the TCPA has any impact on his Washington law claims.

Although car2go has presented no valid no basis for dismissing Mr. Aderhold's Washington claims, the court will not consider his class certification motion. To begin, his motion (including the structure of subclasses he proposes to represent) relies on his belief that he has a valid TCPA claim. He must, at a minimum, revise his motion accordingly. Perhaps more significantly, he filed that motion without taking discovery. He believed that he was required to do so in order to stave off car2go's efforts to moot his claims by making him a fully favorable offer of judgment. The court has dismissed that

ORDER – 17

notion in the first of today's orders. It seems unlikely that Mr. Aderhold *prefers* to file a class certification motion without the benefit of discovery.

Accordingly, the court will terminate Mr. Aderhold's class certification motion. No later than March 21, the parties must meet and confer and submit a joint statement to the court. Mr. Aderhold shall inform car2go whether he wishes to engage in class certification discovery. Assuming that he does, the parties shall discuss a reasonable timetable for discovery, including a reasonable deadline for Mr. Aderhold's revised class certification motion. Alternatively, Mr. Aderhold may forego discovery, revise his class certification motion in accordance with today's order, and file the revised motion. In either event, the parties shall file a joint statement no later than March 21. When the parties meet and confer, they shall also conduct a conference in accordance with Federal Rule of Civil Procedure 26(f), although they shall focus on discovery related to class certification. As part of their joint statement, the parties shall proffer deadlines for the exchange of initial disclosures.

## IV. CONCLUSION

For the reasons previously stated, the court GRANTS car2go's motion for judgment on the pleadings (Dkt. # 13) and dismisses Mr. Aderhold's TCPA claim. The court DENIES Mr. Aderhold's motion to strike. Dkt. # 35. The clerk shall TERMINATE Mr. Aderhold's motion for class certification (Dkt. # 23), although Mr. Aderhold may file a new class certification motion in accordance with this order. The parties shall submit the joint statement described in this order no later than March 21, 2014.

DATED this 27th day of February, 2014.

The Honorable Richard A. Jones
United States District Court Judge

ORDER – 18